**In re Adoption of E.O.G.**

*Donald B. Swope,* for petitioners.
*Katherene E. Holtzinger Conner,* guardian ad litem for children.

MILLER, *J.*, December 17, 1993—

## BACKGROUND

On June 9, 1993, the court accepted the filing of two petitions for adoption, one for each of the two children who are the subject of these proceedings. The court thereupon appointed Tressler Lutheran Services to investigate the background of the petitioners, the circumstances of the placement, and the advisability of the adoptions. On August 27, 1993, the court appointed Katherene E. Holtzinger Conner, Esquire, as guardian ad litem for the children, pursuant to section 2313 of the Adoption Act, 23 Pa.C.S. §2313. A hearing was held on the combined petitions for adoption on October 20, 1993. Tressler Lutheran Services, the investigator appointed by the court, filed a report of its investigation and recommended that the adoption be granted. On October 27, 1993, the guardian ad litem filed with the court a memorandum and recommendation. The guardian ad litem concluded that the adoptions were not prohibited by the laws of the Commonwealth of Pennsylvania and that the granting of the petitions for adoption would be in the best interests of both children. We acknowledge the research and thoughtful effort which the guardian ad litem has expended in the representation of the children's interest.

## FINDINGS OF FACT

(1) A.S.G., a male child, was born on September 20, 1985, in what was then a so-called Eastern European bloc country.

(2) E.O.G., a female child and sibling of A.S.G., was born on September 18, 1986, in the same Eastern European bloc country.

(3) On or about September 17, 1991, the mother of the children died.

(4) On October 3, 1992, the father of the children executed a surrender of his parental rights to both of the children and agreed to their adoption in the United States.

(5) On October 6, 1992, the appropriate governmental agency of the Eastern European bloc country issued a separate decree of adoption for each of the two children naming C.M.G., one of the petitioners, as the sole adopting parent.

(6) Thereupon, C.M.G. brought both of the children to the United States and to the Commonwealth of Pennsylvania, where the children now reside with C.M.G. and her companion, J.M.B.

(7) C.M.G. and J.M.B. are unmarried women who have shared a lesbian relationship for approximately 12 years.

(8) Both C.M.G. and J.M.B. are well-educated, hold responsible positions in the community, and have incomes that are significantly above average.

(9) Both C.M.G. and J.M.B. are persons of good character with the desire and with the ability to parent each of the two children involved in this proceeding.

## DISCUSSION

C.M.G. is the legal mother of both of the children pursuant to decrees of adoption entered on October 6, 1992, by the appropriate authorities in an Eastern European bloc country. The petition for adoption in each of these cases asks the court to decree the petitioners C.M.G. and J.M.B. as adoptive legal parents. We consider this a request to confirm the foreign adoption and to permit J.M.B. to also adopt the children.

To our knowledge this is a case of first impression in the Commonwealth of Pennsylvania, in that the court is asked to decree the adoption of children by two single women who live in a homosexual relationship. We see this area as presenting two separate and distinct issues. First, may the court legally approve the adoptions and second, are these adoptions appropriate in view of the best interests of the children?

The threshold issue is whether the law permits or prohibits the proposed adoptions. The Pennsylvania Adoption Act, 23 Pa.C.S. §2312, provides as follows:

"Any individual may become an adopting parent."

Clearly, the statute does not prohibit adoptions by two adopters of the same sex. The Pennsylvania statute is gender neutral and neither expressly prohibits or condones a "same sex adoption." That being the case, the effect of any antidiscrimination statutes, federal or state, has no applicability to the present proceeding, for the reason that the court's focus must be on the best interests of the children, not the interests of the petitioning adopters.

Having concluded that the laws of this Commonwealth do not prohibit a homosexual couple from adopting a child or children, we turn our inquiry to the issue of whether the interests of the children involved in this proceeding would be best served by the granting of the petitions to adopt. Whatever our personal feelings may be concerning the morality and social desirability of homosexual behavior, we are constrained by our judicial oath of office to consider these issues impartially, fairly, and in accordance with the law as we find it to be. In doing so, we must consider the evidence that has been presented to us, including background studies of the parties, psychological evaluations of the

children, and an intuitive sense of the direction in which the law of this Commonwealth is moving.

The courts in our sister states have in recent years considered the same issues raised here. Although the results have differed from state to state, for the most part courts in those states with adoption statutes as broad as ours have permitted such adoptions. *In re Adoption of Charles B.,* 552 N.E.2d 884 (Ohio 1990); *In the Matter of the Adoption of a Child by J.M.G.,* (slip opinion dated July 28, 1993, Superior Court of New Jersey, Essex County Family Part, Docket no. FA-07-1658-92); *Adoption of Tammy,* (slip opinion dated September 10, 1993, Middlesex, Massachusetts). In the last two of the cited cases, the proposed adoption involved the biological parent of the child and her lesbian partner. In all of the cited cases, the court granted the adoptions. Among the factors which those courts found compelling and which we believe are particularly applicable to this case are these:

(1) The adoptions will not cause a change in the children's daily life.

(2) The adoptions will provide security, emotionally and legally.

(3) The adoptions will enable the children to be assured of continued support.

(4) The adoptions will assure that the children become legal heirs for purposes of inheritance rights, etc.

(5) The adoptions will make the children eligible for health insurance and social security benefits that they may not otherwise be entitled to receive.

(6) The adoptions will protect the community of the relationship of the children to the new adopting parent in the event of separation or death of the other partner, the original adopting parent.

It is important to note that C.M.G. already has been accorded the status of legal parent by virtue of the adoption decrees in the country of the children's births. We see no benefit to be gained from failing to recognize and confirm those decrees. Were we to deny these petitions, the children would continue to live in the household of the petitioners as the legal children of C.M.G. The level of love, care and commitment to the children would presumably not lessen in any way or to any measurable degree. The children would, however, be deprived of legal rights having to do with support, rights of inheritance, social security benefits and health insurance that will accrue to them by virtue of their status as legal children of J.M.B.

Notwithstanding material benefits, however, we would not hestitate to deny the petitions were we to conclude that the children would be harmed by living in the household of the petitioners.

The Superior Court of Pennsylvania has held that a court may not restrict a homosexual parent's custodial rights absent a showing that the parent's sexual relationship with her partner will be harmful to the child. *Blew v. Verta,* 420 Pa. Super. 528, 617 A.2d 31 (1992).

From the evidence in this case, we cannot conclude that any harm would accrue to the children. The testimony of Dr. Morgan to the effect that the children are thriving and likely to continue to do so, and that the sexual orientation of the proposed adopters has not adversely affected the children and will not do so is persuasive evidence. The court has been provided with research, admittedly provided by the prospective adopting parents and Tressler Lutheran Services, which research indicates that comparative studies show that a

child is not damaged psychologically in development or sexual orientation when raised in a "same sex family." While we believe that the children will feel some confusion and will experience the difficulties of feeling different or embarrassed during their adolescent years, we believe that, on balance, the love and commitment that the adopting parents will give to them counterbalance the negative effects of the lifestyle of the home in which they live. We note that the research to which we have been directed seems to dispel any notion that one raised in a homosexual household will himself/herself become homosexual. The literature seems to be consistent on two points:

(1) Little difference exists in the overall mental health of children raised in lesbian mother households and children raised in heterosexual mother households.

(2) The quality of mothering rather than the mother's sexual orientation is the most crucial factor.

We are satisfied from the record that both of the adopting parents are well-qualified to parent the children, and that they are devoted to each other and to the children. The children have seemingly developed both a psychological and emotional bonding with both petitioners. This is important in that prior to their adoption in the country of their birth, they had resided in an orphanage for a considerable period of time.

In granting the adoptions, we hold that the Adoption Act of the Commonwealth of Pennsylvania does not disqualify a homosexual couple from adopting a child or children. In every case, the best interests of the child are paramount, and a court will examine the evidence to determine whether the interests of the child are best served by the granting of the petition. In this case, we have determined that the best interests of the children are served by their adoption.

## CONCLUSIONS OF LAW

(1) The Adoption Act of the Commonwealth of Pennsylvania does not prohibit a homosexual couple from adopting a child or children.

(2) The best interests of both children in this proceeding will be promoted by their adoption by the petitioners.

Accordingly, we enter the following decree.

## DECREE

And now, to wit, December 17, 1993, we decree the adoptions of E.O.G. and A.S.G. by C.M.G. and J.M.B. In so doing, we confirm the adoption decrees entered on October 6, 1992, by the appropriate governmental agency of the country of the children's birth. We will issue formal and separate decrees for each child.